**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH I. ALLISON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CARLOS CRAIG and THOMAS SALAZAR,<br><br>　　　　　　Defendants. | Civil Action No. 23-21395 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon the Application to Proceed *In Forma Pauperis* ("IFP") filed by Plaintiff Kenneth I. Allison together with Plaintiff's Complaint against Defendants Carlos Craig and Thomas Salazar. (ECF Nos. 1 & 1-2.) For the reasons set forth below, and other good cause shown, Plaintiff's IFP Application is **GRANTED**; however, the Complaint is **DISMISSED** without prejudice. Plaintiff is provided thirty days to file an amended complaint.

**I.　　BACKGROUND**

The following alleged facts are accepted as true solely for the purpose of screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff Allison, a resident of Trenton, New Jersey, has brought this suit against Defendants Salazar, a resident of Florida, and Craig to recover damages stemming from Defendants' tortious conduct that has defrauded Allison of about $38,000. (ECF No. 1 at 2-4.[1])

---

[1]　Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Allison alleges that on July 26, 2023, he contacted Defendants to inquire about a $200,000 "TANF" grant[2] based on the recommendation of Allison's childhood friend. (*Id.* at 3.) Between August and October of 2023, Allison sent thousands of dollars to Defendants in gift cards and cash payments in the hope of securing this grant. (*Id.*) On August 27, 2023, Defendant Craig allegedly informed Allison that Allison would have to pay $40,000 in taxes to obtain the grant because the IRS stopped the delivery. (*Id.*) In September 2023, Craig allegedly opened two credit card accounts in Allison's name without his authorization. (*Id.*) Later, Craig sent Allison a link to a web-based wallet. (*Id.*) When Allison tried to transfer the funds from the wallet to his bank account, a message demanding an additional payment of $25,000 in "VAT charges" prevented Allison from completing the transaction. (*Id.*) Allison claims that he has had no contact with Craig after October 18, 2023. (*Id.*)

Allison filed his Complaint and IFP Application on October 24, 2023. (ECF Nos. 1 & 1-2.) Allison alleges that Defendants' above-described actions have caused him emotional distress and seeks $15,000 in damages for his "pain and suffering" in addition to the return of the monies he paid to Defendants. (ECF No. 1 at 4.)

In his IFP Application, Allison lists a $1,555 monthly income from retirement payouts and monthly expenses of $1,380. (ECF No. 1-2 at 2, 5.) Allison also represents that he owns a vehicle valued at $3,000. (*Id.* at 3.) Allison's bank account was allegedly frozen as a result of Defendants' unlawful conduct, and he represents that he has over $12,000 in credit card debt. (*Id.* at 5.)

---

[2]   Allison does not specify what he means by a TANF grant.

## II. LEGAL STANDARD

### A. IFP APPLICATIONS

To proceed *in forma pauperis* under 28 U.S.C. § 1915(a), a plaintiff must file an affidavit that states all income and assets, inability to pay the filing fee, the "nature of the action," and the "belief that the [plaintiff] is entitled to redress." 28 U.S.C. § 1915(a)(1); *Glenn v. Hayman*, Civ. No. 07-112, 2007 WL 432974, at *7 (D.N.J. Jan. 30, 2007). "In making such an application, a plaintiff must state the facts concerning his or her poverty with some degree of particularity, definiteness or certainty." *Keefe v. NJ Dep't of Corr.*, Civ. No. 18-7597, 2018 WL 2994413, at *1 (D.N.J. June 14, 2018) (quoting *Simon v. Mercer Cnty. Cmty. Coll.*, Civ. No. 10-5505, 2011 WL 551196, at *1 (D.N.J. Feb. 9, 2011)).

### B. SUBJECT MATTER JURISDICTION

"Federal courts, as courts of limited jurisdiction, have an obligation to establish subject matter jurisdiction, raising it *sua sponte* if necessary." *United States v. Port Imperial Ferry Corp.*, Civ. No. 16-2388, 2023 WL 2535302, at *4 (D.N.J. Mar. 16, 2023) (citing *Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995)). If a court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action because subject matter jurisdiction "call[s] into question the very legitimacy of a court's adjudicatory authority." *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007); *see also Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005) ("[The court is] required to consider the issue of subject matter jurisdiction, even though neither party contends that it is lacking." (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986))). "Where a district court lacks subject-matter jurisdiction, its disposition of such a case will be without prejudice." *Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580 (3d Cir. 2007) (citing *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d

152, 155 (3d Cir. 1997)).

### C. REVIEW PURSUANT TO 28 U.S.C. § 1915(E)

To guard against potential "abuse" of "cost-free access to the federal courts," 28 U.S.C. § 1915(e) empowers district courts to dismiss an IFP complaint if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards. *See Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995). Indeed, the Court must dismiss any claim, prior to service, that fails to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). *See* 28 U.S.C. § 1915(e)(2)(B); *see also Martin v. U.S. Dep't of Homeland Sec.*, Civ. No. 17-3129, 2017 WL 3783702, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).").

Although courts construe *pro se* pleadings less stringently than formal pleadings drafted by attorneys, *pro se* litigants are still required to "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III. DISCUSSION

#### A. PLAINTIFF'S IFP APPLICATION

As a threshold matter, the Court finds that Plaintiff is eligible to proceed *in forma pauperis*. In support of his IFP Application, Plaintiff submits a sworn statement of his assets, income and expenses. (*See* ECF No. 1-2.) The IFP Application is complete and indicates that Plaintiff's monthly income is low and consumed almost entirely by his monthly expenses. Although Plaintiff claims that he has paid Defendants large sums of money over the course of several months, he now represents that his bank account was frozen as a result of Defendants' alleged unlawful conduct. (*Id.* at 5.) Courts have found that plaintiffs who cannot access their funds in frozen bank accounts may establish indigence. *See Est. of Sever ex rel. Sever v. U.S. Sec'y of Health & Hum. Servs.*, Civ. No. 19-22130, 2021 WL 3884256, at *1 (D.N.J. Aug. 31, 2021) (Shipp, J.) (granting an IFP application when a plaintiff had $10,000 in a frozen bank account because the funds were inaccessible to him).

#### B. SUBJECT MATTER JURISDICTION

Based on the Court's review, Plaintiff's Complaint does not provide an adequate basis for federal court jurisdiction. There currently appears to be neither federal question nor diversity jurisdiction to allow the claims to be heard in federal court. *See Johnson v. AT&T*, Civ. No. 23-00814, 2023 WL 6260139, at *1 (W.D. Pa. Sept. 26, 2023) ("Subject matter jurisdiction is the Court's authority to hear a case. Generally, subject-matter jurisdiction arises through the assertion of a federal question or through the diversity of the parties.").

As to federal question jurisdiction, the Complaint does not explicitly state what claims Plaintiff seeks to maintain. Nevertheless, in light of the Court's obligation to read *pro se* pleadings liberally, the Court construes the Complaint to assert claims for fraud and conversion. Both of

these tort claims arise under state common law and not federal law. *See, e.g.*, *Chadda v. Magady*, 481 F. App'x 795, 796 (3d Cir. 2012) (affirming the district court's conclusion that the allegations that defendants obtained the property through fraud "raise—at best—tort claims under state, and not federal, law"); *Jager v. Fleet Mgmt. Rd. Serv.*, Civ. No. 148130, 2017 WL 4074281, at *3 (D.N.J. Sept. 14, 2017) (noting that fraud and conversion are state law tort claims). Thus, the Court does not have federal question jurisdiction.

As to diversity jurisdiction, the Court cannot establish that this is a viable basis for federal jurisdiction for two reasons. First, while Allison is a citizen of New Jersey and alleges that Defendant Salazar is a citizen of Florida, there are no facts alleged as to the citizenship of Defendant Craig. If Craig is also a citizen of New Jersey, this would defeat diversity because "in cases with multiple plaintiffs or multiple defendants, no plaintiff [can] be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). Second, Plaintiff has not alleged that the amount-in-controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a). *Id.* ("[D]istrict courts 'have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.'" (quoting 28 U.S.C. § 1332(a))). Plaintiff requests $15,000 in compensatory damages for pain and suffering in addition to the return of the approximately $38,000 he spent on a grant that he never received. (ECF No. 1 at 4; ECF No. 1-1.) The total alleged damages of about $53,000 is below the required threshold of $75,000. Therefore, on these facts, the Court cannot find that Plaintiff has established the basis for diversity jurisdiction.

### C. REVIEW OF PLAINTIFF'S COMPLAINT

If Plaintiff chooses to file an amended pleading to cure the jurisdictional defect noted above,[3] the Court encourages him to provide additional factual detail as to the basis of his claims as well as what claims, precisely, he wishes to maintain against Defendants. The current allegations are spartan and would benefit from a further explanation as to the who, what, when, where and how of the events at issue. For example, Plaintiff should provide specific factual matter as to the actions of each Defendant.

All in all, as Plaintiff is proceeding *pro se*, and as a more comprehensive statement may reveal legitimate grounds for federal jurisdiction and relief, Plaintiff will have thirty days to file an amended complaint.

### IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's IFP Application (ECF No. 1-2) is **GRANTED**; however, Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice. An appropriate Order follows.

Dated: October 31, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[3] In the alternative, if Plaintiff does not believe he can cure the jurisdiction defect, he has an option to file his complaint in the New Jersey Superior Court.